# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

XAMONTHY BANDITH,

        Petitioner,

    v.

KRISTI NOEM, et al.,

        Respondents.

_____/

Case No. 1:26-cv-01003-KES-SKO (HC)

**FINDINGS AND RECOMMENDATIONS TO GRANT PETITION**

**[Doc. 1]**

**[10-DAY DEADLINE]**

Petitioner Xamonthy Bandith is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner filed the instant petition on February 5, 2026. (Doc. 1.) On February 6, 2026, the Court issued an order directing Respondents to show cause whether the petition was legally or factually distinguishable from prior cases in which the Court had granted relief. (Doc. 6.)  On February 12, 2026, Respondent's filed a combined response to the order to show cause and response to the petition. (Doc. 8.) Petitioner did not file a reply. For the reasons detailed below, the Court will recommend the petition be GRANTED.

## BACKGROUND

Petitioner is a native and citizen of Laos who came to the United States as a refugee in 1989.  (Doc. 8-1 at 2.) He then became a lawful permanent resident in 1992.  (Id.)

Thereafter, Petitioner was convicted of the following crimes:

- March 27, 1995, Burglary in the Third Degree, in violation of Iowa Code Section

713.6A, and sentenced to five-year suspended sentence and two years of probation;

- January 7, 2004, Felony Possession of a Firearm, in violation of Cal. Penal Code § 12021(A)(a), and sentenced to 180 days in custody plus probation.

(Doc. 8-1 at 2-3, 15-16, 18-29.)

On or about April 7, 2004, Department of Homeland Security ("DHS") initiated removal proceedings under Section 240 of the Immigration and Nationality Act ("INA") charging Petitioner with removability under Section 237(a)(2)(c) of the INA. (Id. at 3.) On July 23, 2004, Petitioner conceded the charge of removability in Immigration Court. (Id. at 3.)  On September 16, 2004, an Immigration Judge ordered Petitioner removed to Laos. (Id. at 3, 31.) Petitioner's lawful permanent status was terminated. (Id. at 3.) Petitioner waived his right to appeal. (Id. at 3.)

On December 20, 2004, Petitioner was released from ICE custody and placed on an Order of Supervision ("OSUP") pending removal. (Id. at 3, 33-36.)

On December 22, 2025, Petitioner was issued a Notice of Revocation of Release advising Petitioner that his order of supervision was being revoked due to changed circumstances. He was further advised that an informal interview pursuant to 8 C.F.R. §§ 241.4, 241.13 would be provided at which time Petitioner could respond to the reasons for revocation. (Id.) On the same date, Petitioner was taken into custody and given an informal interview. (Id. at 40.)

On February 2, 2026, Enforcement and Removal Operations ("ERO") obtained a travel document for Petitioner from Laos, and ERO intends to remove Petitioner to Laos. (Id. at 43.)

On February 5, 2026, Petitioner filed the instant habeas petition seeking release on four grounds: (1) that Petitioner's revocation of release was unlawful because there is no significant likelihood of removal in the reasonably foreseeable future; (2) Respondents violated 8 C.F.R. § 241.13(i)(3) by failing to notify Petitioner of the reason for his detention or an interview to respond to the reasons for revocation (3) continued detention violates the Due Process Clause of the Fifth Amendment because there is no significant likelihood of removal in the reasonably foreseeable future; (4) continued detention is unlawful without an individualized determination as to whether detention is justified based on danger or flight risk; (5) that Petitioner's potential removal to a third country violates statutory and regulatory provisions which require Respondents to provide a

2

noncitizen a forum to demonstrate risk of torture or persecution in a specified country. (Doc. 1 at 10-14).

The Court finds merit to Ground Two of the petition. Therefore, the Court will recommend the petition be granted.

**DISCUSSION**

**A. Jurisdiction**

Before turning to the merits, the Court must first assure itself of jurisdiction.  See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577, 583 (1999).  Courts have long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C § 2241(c)(3).  In doing so, we carry out the "historic purpose of the writ," namely "to relieve detention by executive authorities without judicial trial." Zadvydas, 533 U.S. at 699.  But the Supreme Court has consistently "rejected" any suggestion that section 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation.  Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020).  Had Petitioner sought to challenge the Government's decision to execute his removal order, it would indeed bar this Court's review.  But because Petitioner's due process claim contests only his detention resulting from violations of the Government's mandatory duties under certain statutes, regulations, and the Constitution, the Court finds that it has jurisdiction to determine the lawfulness of Petitioner's detention.  See Arce v. United States, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [section 1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders.").

**B. Detention Pursuant to 8 U.S.C. § 1231(a)(6)**

Petitioner claims his continued detention violates his due process rights, because there is no significant likelihood of removal in the reasonably foreseeable future, and no individualized determination was made to determine whether detention is justified based on danger or flight risk.

Petitioner is subject to a final order of removal. Therefore, 8 U.S.C. § 1231 governs his detention and removal. Under this statute, an alien is subject to an initial 90-day removal period

during which detention is mandatory. 8 U.S.C. § 1231(a)(1),(2). After this period expires, ICE has discretion to continue detaining the alien or to release pending removal. 8 U.S.C. § 1231(a)(6). In Zadvydas v. Davis, 533 U.S. 678, 682 (2001), the Supreme Court held that § 1231(a)(6) did not authorize the government to indefinitely detain a removable alien. The Supreme Court concluded that a detention period less than six months is presumptively reasonable. Id. Beyond that six-month period, the alien must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

Petitioner was initially detained pursuant to § 1231(a)(1) in 2004. When ICE could not remove Petitioner during the 90-day removal period, Petitioner was released. On December 22, 2025. Petitioner was re-detained pursuant to § 1231(a)(6). As it has only been two months since Petitioner was re-detained, the period of detention is presumptively reasonable.

Petitioner contends there is no significant likelihood of removal. As noted by Respondents, however, Petitioner has been issued a travel document for Laos, and there is nothing preventing the government from removing Petitioner to Laos. Petitioner fails to show he is stuck in a "removable-but-unremovable limbo." Prieto-Romero v. Clark, 534 F.3d 1053, 1063 (9th Cir. 2008). Thus, it appears Petitioner's continued detention is proper.

**C.  Due Process**

Petitioner contends that the manner in which his release on supervision was revoked violated statute and due process. Upon review, the Court finds merit to this claim.

Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

First, to revoke a removable alien's release under section 241.13(i)(2), ICE must determine that the alien is significantly likely to be removed in the reasonably foreseeable future "on account

of changed circumstances."[1] § 241.13(i)(2). The Government asserts that it has assessed that "based on a review of [Petitioner's] official alien file and a determination that there are changed circumstances in [his] case," Petitioner "can be expeditiously removed from the United States pursuant to the outstanding order of removal against [him]." (Doc. 8-1 at 38.) The Government has submitted documentation that it issued a "Notice of Revocation of Release" and "Alien Informal Interview Upon Revocation of Order of Supervision" on December 22, 2025. (Doc. 8-1 at 38-40.) Section § 241.13(i)(2) requires that this determination is made *before* the removable alien has had his release revoked." Tran v. Noem, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (emphasis added); see also Sphabmixay v. Noem, No. 25CV2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025); Phakeokoth, v. Noem, No. 3:25-CV-02817-RBM-SBC, 2025 WL 3124341, at *5 (S.D. Cal. Nov. 7, 2025); Nguyen, v. Noem, No. 25CV2792-LL-VET, 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) ("However, courts 'have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.. . . . This is so even when [] the Government has obtained a petitioner's travel document back to his or her country of origin after their re-detainment." (quoting Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025)). Here, it appears the changed-circumstances determination was made at least at the same time Petitioner was re-detained.

A travel document, however, was not in hand at the time Petitioner was re-detained, and was only recently obtained on February 2, 2026. The Court is skeptical that the government was convinced there was a change in circumstances such that removal was likely when Petitioner was re-detained. To the extent that the Government advances an argument that this kind of determination may be supported by evidence showing a general change in a country's policy of accepting removable aliens on a case-by-case basis, such arguments have been repeatedly rejected. See, e.g., Phan v. Beccerra, No. 2:25-CV-01757-DC-JDP, 2025 WL 1993735, at *4 (E.D. Cal.

---

[1] The Court notes that section 241.13(i)(1) provides another avenue for the Government to revoke release under section 241.13 in instances where an alien "violates the conditions of release." But nowhere in the record does the Government purport to rely on this authority for the October 16, 2025, revocation of Petitioner's release, so the Court will not address this provision.

July 16, 2025) ("Respondents contention that Petitioner's removal is reasonably foreseeable because removals to Vietnam are in fact occurring is unpersuasive" where "[p]re-1995 Vietnamese immigrants may be repatriated to Vietnam on 'a case-by-case basis'" and Vietnam has "discretion whether to issue a travel document to any individual." (quoting Hoi Thanh Duong v. Tate, No. 24-cv-04119-H, 2025 WL 933947, at *4 (S.D. Tex. Mar. 27, 2025))).

Second, even if the Government had made a determination based on legally sufficient "changed circumstances," the Court finds the Government violated section 241.13(i)(3)'s notice requirement.  Section 241.13(i)(3) sets forth "revocation procedures" governing revocation carried out pursuant to this section.  To revoke a removable alien's release under section 241.13(i)(3), an alien must "be notified of the reasons for revocation of his or her release" and those reasons must be "stated in the [written] notification." 8 C.F.R. § 241.13(i)(3); see Tran, 2025 WL 3005347, at *3 (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release").

Here, the written notice provided no reason for re-detention. The government merely recited the words "changed circumstances" with no explanation of the changed circumstances. (Doc. 8-1 at 38.) Section 241.13(i)(3)'s procedural requirement to provide notice to the alien of the reasons for revocation would make little sense if it could be met just by a reference to "changed circumstances." Petitioner could not have been able to respond to the reasons for revocation, because no reasons were given. "Courts in this district, circuit, and across the country have held that such a vague, generic statement is insufficient notice." Hashemi v. Noem, 2025 WL 3468694, at *5 (C.D. Cal. Nov. 19, 2025) (collecting cases).

Further, the statute provides that "[t]he Service will conduct an initial informal interview promptly after [the alien's] return to Service custody *to afford the alien opportunity to respond to the reasons for revocation stated in the notification*." 8 C.F.R. § 241.13(i)(3) (emphasis added). The purpose of the informal interview, in other words, is to allow the petitioner to respond to reasons already given; without those reasons, the petitioner has no way of knowing what evidence or information is responsive. That this occurred in this case is all too clear given the Alien Formal Interview form is completely blank where Petitioner's response to the reasons for revocation would

be recorded. (Doc. 8-1 at 40.)  Petitioner offered no oral response regarding the reasons for revocation because no reasons were given.  The government thus failed to comport with the requirements of section 241.13 and Petitioner's due process rights. See Roble v. Bondi, 803 F. Supp. 3d 766, 772 (D. Minn. Aug. 25, 2025) ("Providing a notice that simply recites the language of the regulation does not satisfy the Government's obligation to provide the 'reasons' why [the petitioner's] Order of Supervision was revoked.").

For the same reasons, it appears that if ICE assessed a likelihood of Petitioner's removal before revoking his release, it could not have been "*on account of*" legally relevant changed circumstances pursuant to section 241.13(i)(2) insofar as no reasons were provided.  With "no evidence of an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Court finds the Government has violated section 241.13(i)(2). See, e.g., Sphabmixay, 2025 WL 3034071, at *2 (finding the same). Thus, the government failed to provide notice pursuant to § 241.13(i)(3), and this failure then deprived Petitioner of the opportunity to meaningfully respond.

Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).  Even though the Government has since obtained a travel document from Laos, Petitioner should be entitled to release. Id. at *1–6 (granting habeas and releasing the petitioner with a deportation order back on supervision when the respondents failed to comply with § 241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin); Tran, 2025 WL 3005347, at *1–4 (same); Sphabmixay, 2025 WL 3034071, at *3; Phakeokoth, 2025 WL 3124341, at *5 ("Respondents also fail to specify whether ICE requested travel documents for Petitioner before or after his arrest. Thus, ICE's revocation of Petitioner's release does not appear to have been 'on account of' changed circumstances.").  This Court should follow suit.

Because the Government was required to, but failed to comply with section 241.13(i) when it revoked Petitioner's supervised release on December 22, 2025, issuing a writ to reinstate that release is warranted to preserve the status quo before the Government's unlawful actions. The

status quo *ante litem* is "the last uncontested status which preceded the pending controversy[.]" GoTo.com, Inc. v. Walt Disney, Co., 202 F.3d 1199, 1210 (9th Cir, 2000) (quoting Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963)); see Ariz. Dream Act Coalition v. Brewer, 757 F.3d 1053, 1061 (9th Cir. 2014) ("the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose") (citing McCormack v. Hiedeman, 694 F.3d 1004, 1020 (9th Cir. 2012)).

Here, Petitioner had been on supervised release for over twenty years until he was re-detained by the government. Because Petitioner challenges his re-detainment, the last uncontested status of Petitioner was before he was re-detained on December 22, 2025. See Doe, 2025 WL 691664, at *2 ("It is questionable whether that status quo is properly considered to be detention when the Government suddenly took an allegedly unconstitutional action in rearresting Petitioner without a hearing."); Domingo-Ros v. Archambeault, No. 25-cv-01208-DMS-DEB, 2025 WL 1425558 (S.D. Cal. May 18, 2025) (granting an injunction for petitioners that sought a "probationary injunction" to "preserve the status quo preceding this litigation—their physical presence in the United States free from detention"); Pinchi v. Noem, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *3 (N.D. Cal. Jul. 4, 2025) (finding that the "moment prior to the Petitioner's likely illegal detention" is the status quo). Accordingly, the Court finds Petitioner's immediate release is required to return him to the status quo.

## RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED:

1) The Petition for Writ of Habeas Corpus be GRANTED.

2) The Government be ORDERED to immediately release Petitioner from custody with all conditions that were in effect before his December 22, 2025, re-detainment.

3) Respondents be ENJOINED AND RESTRAINED from re-detaining Petitioner unless and until they follow all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

4) The bond requirement of Federal Rule of Civil Procedure 65(c) should be WAIVED. See Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011). Courts regularly waive

security in cases like this one. See, e.g., Zakzouk v. Becerra, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **March 9, 2026**                    /s/ *Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE